OPINION *Page 2 
{¶ 1} Defendant-appellant Maurice L. Allen appeals his conviction on one count of murder with a firearm specification, two counts of possessing a weapon while under disability and one count of tampering with evidence. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND THE CASE {¶ 2} On February 3, 2006, the Licking County Grand Jury indicted appellant on one count of aggravated murder in violation of R.C.2903.01(A) with a firearm specification in violation of R.C. 2929.14(D) and R.C. 2941.145, one count of murder in violation of R.C. 2903.02(A) and/or (B) with a firearm specification in violation of R.C. 2929.14(D) and R.C. 2941.145, two counts of having a weapon while under disability in violation of R.C. 2923.13(A)(3), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). Appellant entered a plea of not guilty on all counts at his February 13, 2006, arraignment.
 {¶ 3} Appellant filed a motion to suppress on April 13, 2006. In his motion, appellant argued that a December 29, 2005, search of his residence was conducted without a warrant, and therefore all evidence obtained during the search should be excluded from trial. An oral hearing on appellant's motion to suppress was conducted on April 24, 2006. The following testimony was adduced at the hearing.
 {¶ 4} On November 10, 2004, appellant was placed on five (5) years post release control. Transcript of April 24, 2006, motion to suppress hearing at 17. A "conditions of supervision" form signed by all offenders who are placed on PRC was signed by appellant. Id. at 19. Condition nine (9) of the form provided that appellant *Page 3 
agreed to a search without warrant of his person, motor vehicle or place of residence, without a warrant, by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. Id.
 {¶ 5} On or about December 20, 2005, appellant was taken into custody based upon a violation of his post release control (PRC). Id. at 37. Investigating Officer Steven C. Vanoy testified that during a December 20, 2005, conversation with appellant and his attorney, appellant advised that he was on parole. Id. at 38. Officer Vanoy testified further that all the information received by the investigating officers indicated that appellant was on PRC. Id. Appellant was incarcerated at the Licking County Justice Center on December 29, 2005. Id. at 37.
 {¶ 6} Officer Vanoy testified that information was received from a reliable source that appellant had an AR 15 assault rifle at the residence he shared with his mother at 106 South 5th
Street. Id. at 39. Vanoy accompanied appellant's parole officer, Andy Kalas, to the subject residence. Id. at 40. Vanoy testified that as the officers exited their vehicle, Mr. Kalas telephoned the residence.[1]
Appellant's mother, Wanda Brent, answered the telephone. Id. at 40 — 41, 57 — 58. Vanoy testified further that Kalas told Brent that he and the other officers were outside, and asked her to come to the door. Id. at 42. Ms. Brent answered the door, and the officers asked if they could come inside. Id. Brent told the officers to "come on inside". Id. at 43. Vanoy testified that Kalas advised Brent that the officers had information that there were firearms inside the house, and asked if the officers could look around. Id. Vanoy testified that there was nothing to indicate that Brent was not voluntarily consenting to the search. Id. at 47. During the *Page 4 
search, an assault rifle was found, as well as a box for another firearm and some bullets. Id. at 44.
 {¶ 7} Ms. Brent testified that appellant's parole officer telephoned her on December 29, 2005, and asked her to come open the door. Id. at 58. Brent testified further that when she greeted the officers at the door, they told her they were investigating appellant in connection with a homicide, and asked if they could search her home. Id. Brent told the officers "yeah". Id. Brent testified that after the officers were inside the house, she was told by one of the officers that the search was permissible because appellant was on parole. Id.
 {¶ 8} Vanoy testified that the officers first learned that there might be some question as to the validity of appellant's PRC sometime in January of 2006.[2] Id. at 46.
 {¶ 9} Appellant argued that the search was invalid, as it was conducted without a warrant. Appellant argued further that his PRC was invalidated by the Ohio Supreme Court's decision in Hernandez v.Kelly, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, and that, as a result, his PRC status was not a proper basis for conducting a warrantless search of his premises. Appellant argued, in the alternative, that his incarceration on December 20, 2005, tolled his PRC, again vitiating his PRC status as a proper basis for conducting a warrantless search. Finally, appellant argued that Brent did not consent to the search, but rather, was told that the officers had the authority to search the premises due to appellant's PRC status.
 {¶ 10} Appellee argued that Brent consented to the search. Appellee argued further that neither consent nor a warrant were necessary to conduct a legal search, as *Page 5 
appellant was on PRC at the time of the search. Appellee argued finally that even if appellant's PRC status was in question, all officers involved in the search effectuated the search based upon a good faith belief that appellant's PRC status was valid.
 {¶ 11} Pursuant to a judgment entry filed on April 27, 2006, the trial court denied the appellant's motion to suppress, concluding that the officers relied in good faith upon the apparent validity of the search condition, and that the appellant's mother voluntarily consented to the search. The case thereafter proceeded to trial.
 {¶ 12} During the four (4) day trial that commenced on August 8, 2006, the following evidence was adduced. In November, 2005, Tracy Rogers, the mother of appellant's child, was the victim of a home invasion during which money belonging to appellant was taken. Appellant made it known to his friends that he was actively looking for the perpetrators of the crime. Appellant learned that Michael Johnson, aka "Little Cuz", may have been one of the robbers.
 {¶ 13} On December 9, 2005, appellant, who was on parole and was not to have possession of any firearms, went to some bars with a friend named Michael Godbolt. Godbolt testified at trial as a witness for the State. According to Godbolt, on the evening in question appellant was wearing a brown Carhartt brand coat, and Godbolt was wearing a black Perry Ellis coat. In the early morning hours of December 10, 2005, appellant and Godbolt went to the Elbow Lounge. When they arrived at the Elbow Lounge, they observed Michael Johnson sitting in a car outside the bar smoking marijuana. Appellant conversed with Johnson, and then shot Johnson three times.
 {¶ 14} Appellant and Godbolt fled the scene. Godbolt testified that while he drove the vehicle, appellant tossed away pieces of the chrome-plated .45 caliber pistol with *Page 6 
which he had shot Johnson. The two drove to a friend's house where, according to Godbolt, appellant threw away additional pieces of the pistol. Godbolt testified that he gave appellant his Perry Ellis coat, and appellant threw away the brown Carhartt coat he had been wearing. The two then separated. Godbolt testified that appellant was going to Columbus to set up an alibi for his whereabouts during the shooting. Finally, Godbolt testified that appellant had shown him an AR-15 assault rifle kept in the basement of the home appellant shared with his mother.
 {¶ 15} Johnson's cousin, Shawntae Humphries, testified at trial that he had a confrontation with appellant about the home invasion, and claimed that appellant told him appellant would kill the persons responsible for the crime. Humphries did not report the threat to the authorities until after the shooting and arrest of appellant.
 {¶ 16} James Withrow also testified at trial. Withrow, a drug addict who admitted to using drugs during the mid-afternoon of December 9, 2005, testified that he witnessed appellant shoot Johnson.
 {¶ 17} Appellant was convicted on one count of murder in violation of R.C. 2903.02, with a firearm specification in violation of R.C.2929.14(D) and 2941.145, two counts of possession of a weapon while under a disability in violation of R.C. 2923.13, and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). Appellant was sentenced to 27 years to life in prison.
 {¶ 18} Appellant appeals, setting forth the following assignments of error:
 {¶ 19} "I. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE SEIZED DURING THE WARRANTLESS, NON-CONSENSUAL SEARCH ON DECEMBER 29, 2005 OF ALLEN'S RESIDENCE REQUIRING REVERSAL OF *Page 7 
ALLEN'S CONVICTION FOR POSSESSION OF A WEAPON WHILE UNDER DISABILITY.
 {¶ 20} "II. ALLEN'S CONVICTIONS FOR MURDER, HAVING A WEAPON UNDER DISABILITY, AND FOR EVIDENCE TAMPERING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 21} In his first assignment of error, appellant argues that the trial court erred when it denied his motion to suppress. We disagree.
 {¶ 22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *Page 8 State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657,". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 23} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, 1992 WL 91647.
 {¶ 24} Appellant, in his first assignment of error, argues, in part, that once he was confined in jail after his arrest for violating his parole, he was no longer subject to the conditions of post-release control. Appellant contends that the right to perform a warrantless search pursuant to the conditions of his post-release control ceased upon his arrest for allegedly violating the conditions of the same and that, therefore, the warrantless search of his home was illegal.
 {¶ 25} However, we concur with appellee that, although arrested, appellant remained on PRC until the same was revoked by the adult parole authority or the parole board. See R.C. 2967.15(B). R.C. 2967.15 states, in relevant part, as follows:
 {¶ 26} "(A) If an adult parole authority field officer has reasonable cause to believe that a person who is a parolee or releasee, who is under transitional control, or who is under another form of authorized release and who is under the supervision of the adult *Page 9 
parole authority has violated or is violating the condition of a conditional pardon, parole, other form of authorized release, transitional control, or post-release control specified in division (A) of section 2967.131 of the Revised Code or any other term or condition of the person's conditional pardon, parole, other form of authorized release, transitional control, or post-release control, the field officer may arrest the person without a warrant or order a peace officer to arrest the person without a warrant. A person so arrested shall be confined in the jail of the county in which the person is arrested or in another facility designated by the chief of the adult parole authority until a determination is made regarding the person's release status. Upon making an arrest under this section, the arresting or supervising adult parole authority field officer promptly shall notify the superintendent of parole supervision or the superintendent's designee, in writing, that the person has been arrested and is in custody and submit an appropriate report of the reason for the arrest.
 {¶ 27} "(B) Except as otherwise provided in this division, prior tothe revocation by the adult parole authority of a person's pardon, parole, transitional control, or other release and prior to the imposition by the parole board or adult parole authority of a new prison term as a post-release control sanction for a person, the adult parole authority shall grant the person a hearing in accordance with rules adopted by the department of rehabilitation and correction under Chapter 119. of the Revised Code. The adult parole authority is not required to grant the person a hearing if the person is convicted of or pleads guilty to an offense that the person committed while released on a pardon, on parole, transitional control, or another form of release, or on post-release control and *Page 10 
upon which the revocation of the person's pardon, parole, transitional control, other release, or post-release control is based." (Emphasis added).
 {¶ 28} Because appellant's PRC had yet to be revoked, appellant remained on PRC at the time of the search. Contrary to appellant's argument, appellant's arrest for a violation of his PRC did not automatically terminate his PRC status. Thus, the officers and appellant's parole officer were justified in conducting a warrantless search of his home pursuant to the "conditions of supervision" form signed by appellant. As is stated above, condition nine of the form authorized a warrantless search of appellant's home.
 {¶ 29} Moreover, we find that the trial court did not err in denying appellant's Motion to Suppress because there was competent credible evidence in the record that Ms. Brent, appellant's mother, voluntarily consented to the search. At the suppression hearing, Detective Vanoy testified that, when the officers went to the door of the house, Brent answered the door quickly and told the officers to "come on inside." Transcript of Suppression hearing at 43. When she was asked by appellant's parole officer if she cared if they looked around, Brent said "that was fine." Id. Detective Vanoy testified that Brent never objected to the search and that it was never conveyed to her that she had no choice whether or not a search was conducted. Detective Vanoy further testified that there was nothing indicating her consent was anything but voluntary.
 {¶ 30} At the suppression hearing, Brent testified that, when asked, she told the officers that they could search her home. The following is an excerpt from Brent's testimony:
 {¶ 31} "Q. Miss Brent, so you did, in fact, get a phone call from somebody identifying themselves as a parole officer? *Page 11 
 {¶ 32} "A. Yes.
 {¶ 33} "Q. And simply asked if you'd come down and be nice enough to open the door?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. And you came down and did that?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. Then they indicated something along the lines of they had some information maybe some firearms might be a the house and —
 {¶ 38} "A. They didn't —
 {¶ 39} "Q. — they'd like to search?
 {¶ 40} "A. They didn't say anything about firearms. They were just wanting to search my house they said.
 {¶ 41} "Q. Okay. And you said fine?
 {¶ 42} "A. Um-hmm. Yes.
 {¶ 43} "Q. And then you allow them in to do that?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. And nobody's sticking a gun in your face or doing anything like that, right?
 {¶ 46} "A. No.
 {¶ 47} "Q. They properly identified who they were, correct?
 {¶ 48} "A. Correct.
 {¶ 49} "Q. So you go in, and then you're having a casual conversation with one of these officers. Do you remember who you were talking to? *Page 12 
 {¶ 50} "A. No, no, because I was still asleep when they called me, so.
 {¶ 51} "Q. And during this casual conversation, it's for the first time they mention anything about any search issues or search conditions or — right?
 {¶ 52} "A. Beg your pardon? Would you say that again?
 {¶ 53} "Q. Once you're inside, you already allowed them in to search, you're talking with this officer when one of them mentioned something about a search condition on your son's PRC or parole, correct?
 {¶ 54} "A. Yes.
 {¶ 55} "Q. But they're already searching because you've already been nice enough to let them in, right?
 {¶ 56} "A. I didn't think I had a choice.
 {¶ 57} "Q. But you didn't verbalize that? You let them in, correct?
 {¶ 58} "A. Yeah.
 {¶ 59} "Q. Okay. Wasn't anything they did to force their way in, right?
 {¶ 60} "A. No." Transcript of Suppression hearing at 59-61.
 {¶ 61} We find that the trial court did not err in holding that appellant's mother consented to the search, that she allowed the searchprior to the time that she was notified of any condition as a result of post-release control, and that there was no evidence of coercion.
 {¶ 62} Based on the foregoing, we find that the trial court did not err in denying appellant's Motion to Suppress.
 {¶ 63} Appellant's first assignment of error is, therefore, overruled. *Page 13 
 II {¶ 64} Appellant argues in his second assignment of error that his convictions for murder, having weapons under disability and evidence tampering were against the manifest weight of the evidence. We disagree.
 {¶ 65} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, superceded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. In effect, the appellate court sits as a "thirteenth juror" and "disagrees with the factfinder's resolution of the conflicting testimony." Thompkins at 387. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N .E.2d 212, syllabus 1. The standard is difficult to meet, as the rule is necessary "to preserve the jury's role with respect to issues surrounding the credibility of witnesses." Thompkins at 389.
 {¶ 66} Appellant argues that his convictions for murder, having weapons under disability and tampering with evidence were against the manifest weight of the evidence. Appellant argues that there was no direct physical evidence linking him to the shooting, *Page 14 
and that the testimony of the two eyewitnesses, Michael Godbolt and James Withrow, lacked credibility. Appellant notes that while Godbolt entered into a plea agreement with the State, Withrow is an admitted substance abuser. Appellant further argues that his convictions were based on illegally seized evidence.
 {¶ 67} However, we are unpersuaded by appellant's arguments. The testimony of the first witness, Godbolt, was corroborated by the testimony of Quondre Body and James Withrow. Body identified appellant as standing next to the victim's vehicle just before the shooting wearing a Carhartt jacket and running to a van after the shooting. James Withrow testified that he witnessed the shooting, and positively identified appellant as the shooter. Neither Body nor Withrow received any consideration from the State for their testimony. This evidence supports the jury's finding that appellant shot and killed the victim, and appellant's conviction for murder was not against the manifest weight of the evidence.
 {¶ 68} Moreover, while appellant, with respect to the weapon under disability charge, contends that the gun case and ammunition taken from his house were illegally seized, as is stated above, in our discussion of appellant's first assignment of error, we find that such evidence was not illegally seized.
 {¶ 69} In short, upon our review of the record, we cannot say that the jury lost its way and created a manifest miscarriage of justice in convicting appellant of all the charges. The jury, as trier of fact, was in the best position to assess the witnesses' credibility. Clearly, the jury found the testimony of Michael Godbolt and James Withrow to be credible. *Page 15 
 {¶ 70} Appellant's second assignment of error is overruled.
 {¶ 71} The decision of the Licking County Court of Common Pleas is hereby affirmed.
 By: Edwards, J. Gwin, P.J. and Farmer, J. concur *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Officer Kalas was out of the State on the day of the motion to suppress hearing, and therefore unavailable to testify at said hearing. Tr. at 21.
[2] Hernandez v. Kelly, 108 Ohio St.3d 395, 2006-Ohio-126,844 N.E.2d 301, was decided on January 12, 2006. *Page 1